### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 23-mj-239 – ZMF - JEB** |
| | : | |
| **EDWARD RICHMOND, JR.** | : | |
| | : | |
| **Defendant.** | : | |

### MEMORANDUM OF EDWARD RICHMOND, JR. IN OPPOSITION TO THE GOVERNMENT'S EMERGENCY MOTION FOR STAY AND REVIEW OF RELEASE ORDER

Edward Richmond, Jr. has been charged by Complaint – not indictment – with allegedly violating six separate statutes from the United States Criminal Code. Three of the statutes are misdemeanors. None of the three felonies are Class A or B felonies. They are Class C or lower.[1] Of the six charges against Mr. Richmond, three of them are based on the same statute – 18 U.S.C. §1752.

Mr. Richmond was arrested without incident on January 22, 2024, in Baton Rouge, Louisiana. His initial appearance pursuant to FRCRP Rule 5 was held on January 24th before United States Magistrate Judge Erin Wilder-Doomes in the Middle District of Louisiana. Mr. Richmond waived his identity hearing and preliminary hearing. [Exhibit A – See attached DOC. 4 – *United States v. Edward Richmond, Jr.*, 24-mj-00006-UNA – from the Middle District of Louisiana.]

The Government moved for detention under 18 U.S.C. §3142(f)(1)(A) on the basis that the offense charged was a crime of violence. The Government also moved for detention

---

[1] Pursuant to 18 USC §3561, the defendant, if found guilty, would be eligible for probation because none of the felonies are Class A or B felonies. Of course, any sentence the defendant may receive would be subject to the United States Sentencing Guidelines and the discretion of the Court.

under §3142(f)(1)(E) in that there was a use of a dangerous weapon (a baton).  Finally, the Government sought detention under §3142(f)(2)(A) alleging that Mr. Richmond was a serious risk of flight.

The Court took notice of the factual information contained in the bond report.

The Government called FBI Agent Chandler Hudspeth and introduced six exhibits.

The Defense proffered information for the Court and introduced three exhibits.

The Court took a one hour recess to review the exhibits and to meet with the United States Pretrial Services Officer.

After the recess, the Magistrate Judge ruled that the Government did not prove that Mr. Richmond was a flight risk or a danger to others in the community.  The Court held that conditions exist that will reasonably assure his appearance, and the safety of others in the community.  The United States appealed.

**Background**

Over two years ago, on January 24, 2022, undersigned counsel was contacted by Edward Richmond.  Mr. Richmond had been told that the FBI was looking for him.  Mr. Richmond contacted undersigned counsel to set up a meeting with the FBI agent.  On January 24th, I sent an email to FBI Special Agent Kaitlan Carey.  A copy of that email was introduced into evidence at the detention hearing and a copy is attached hereto as Exhibit B.  The email read:

> "Hello Special Agent Carey:  I was contacted by Edward Richmond, who I believe you were trying to locate last week.  Please give me a call if you still want to talk to him.  Thanks."

In response to this, the following day, SA Carey emailed undersigned counsel letting me know that the case agent was Heang Ly and provided an email for Agent Ly. [Also see Exhibit B]

Later that same day, January 25, I emailed Agent Ly. [Copy attached as Exhibit C.] (Note there is a typographical error in the email to Agent Ly when I referred to him as "Agent Richmond" when I should have referred him to Agent Ly.)  In the email I reiterated that we were informed that someone from the FBI was looking for Mr. Richmond and stated, "if you are still interested in talking to Mr. Richmond, please give me a call." There was no reply email or call from Agent Ly or anyone else in the FBI.

Eighteen months passed before the Government reached out to Mr. Richmond or undersigned counsel.  On or about June 20, 2023, I received notice that AUSA Victoria Anne Sheets was trying to contact Mr. Richmond.  I requested that my paralegal, Tina Truett find contact information on Ms. Sheets and on June 20, 2023 Ms. Truett emailed me the contact information for Ms. Sheets.  [See Exhibit D]  I called Ms. Sheets and introduced myself and again reiterated that I represented Mr. Richmond and he was available if they wanted to talk to him.  Ms. Sheets acknowledged as much.  I never received another phone call from her or anyone with the federal government.  Seven months later, Mr. Richmond was arrested in Baton Rouge on the above mentioned criminal complaint.

**Arrest of Edward Richmond, Jr.**

FBI agent Chandler Hudspeth testified at the detention hearing that he, with approximately 25 other law enforcement officers, arrested Mr. Richmond on the morning of January 22nd outside of this apartment.  Agent Hudspeth testified that they saw Mr. Richmond leave his apartment that morning with his son and return shortly thereafter.  When Mr.

Richmond got out of the truck he was arrested without incident. Agent Hudspeth agreed at the hearing that Mr. Richmond did not struggle, fight, or attempt to flee. He was cooperative, polite, and honest. He told the agents that there was a gun in his apartment.

Agent Hudspeth also testified that they had been watching Mr. Richmond for some time. Specifically, they saw him at one or more high school football games. His son, Zade plays football for Southern Lab University in Baton Rouge, Louisiana. The agents followed Mr. Richmond from the football stadium back to his apartment, apparently on more than one occasion.

The Government alleges in their Motion that Mr. Richmond was living "off the grid." This simply is not true. First, the Government makes an issue about Mr. Richmond not having a Louisiana driver's license. Although he does not currently have a Louisiana driver's license, (due to a lapse in car insurance)[2] he does have a current Louisiana personal ID card a copy of which is attached as Exhibit F. It was never explained by any witness for the Government why they were not aware of this personal ID. The address on the personal ID is 15033 Cocodrie, which is in Baton Rouge. This house is owned by Mr. Richmond's parents. There was no testimony at the hearing as to any efforts made by the FBI to go to this address. Mr. Richmond moved to his current address so that his son could attend Southern Lab High School. Families are required to live within the district of the school in order for their children to be enrolled in school and play sports.

Mr. Richmond is also a licensed electrician. Attached as Exhibit G is a copy of his City of New Orleans trade license. As an electrician he is the "qualifying party" for his father's

---

[2] See Exhibit E – Documentation from LA DPS Office of Motor Vehicles regarding Mr. Richmond's LA Driver's License.

business, Baton Rouge Air, LLC.  (See Exhibit H). This report is a public record from the State

Licensing Board for Contractors and it reflects this information.  Also enclosed is a printout

from the Louisiana Secretary of State's website for the family company, Baton Rouge Air, LLC.

Towards the bottom of page 1 and the top of page 1, Edward Richmond, Jr. is listed as an

officer of the corporation.  Again, this is a public record. (See Exhibit I)

       The Government also questions the fact that Mr. Richmond was driving a truck

that was not registered in his name but instead was registered in the name of a company.  As

the Court will see when reviewing the Pre-Trial Services Report[3] submitted to the Magistrate

Judge, Mr. Richmond has been employed since 2007 with Solar Solutions, also known as

Richmond Air, a company owned by this father.  Attached is a "Certificate of Title" for the Ford

truck that Mr. Richmond was driving. [Exhibit J] The truck is titled in the name of Solar

Solutions, LLC, which is a company owned by his father.

       The FBI had been conducting surveillance on Mr. Richmond since September 29, 2023

(See Exhibit K – which is a page from a search warrant application filed by the United States

Attorney's Office for the Middle District of Louisiana seeking a warrant to search Mr.

Richmond's apartment.)  Although at the original detention hearing the prosecutors made

an issue about Mr. Richmond driving a truck not registered to him, they were well aware that

the vehicle he was driving was registered to Solar Solutions, LLC.  This is a company that Mr.

Richmond is employed by and serves as one of their registered officers.

       It is not uncommon, and in fact it is frequently the case, that employees will drive

company trucks not only for work but for personal use – especially in family owned

---

[3] Undersigned counsel is not attaching the Pre-Trial Services Report to this Memorandum.
It is assumed that the Court will have the Pre-Trial Services Report.

companies.   A printout from the Louisiana Secretary of State for Solar Solutions, LLC is attached. [Exhibit L]   It reflects Edmond Richmond, Jr. as an officer.   As with all the other documents this is a public record and easily accessible.

Likewise, the Government tried to make an issue out of the fact that Mr. Richmond does not have utilities in his name.   Attached is a copy of a lease which Mr. Richmond entered into with his landlord for the lease of his apartment.   As the Court can see by reviewing the lease, the bottom of the second page number 4 shows that utilities are included. [Exhibit M].

Also attached [Exhibit N] is the Cox Cable bill for Mr. Richmond at his apartment on 161 WK Gordon St.

The Government alleges that Richmond had no traceable income (See page 17 of Government's Motion).   Attached as Exhibit O are Federal income tax returns (without schedules) filed by Mr. Richmond for the years 2021 and 2022.

The Government would also have the Court believe that Mr. Richmond was living "off the grid" while having a son enrolled in a local high school, Southern Lab High School and attending his football games every Friday night.   No doubt the faculty and administration as well as the coaches at the school would have contact with Mr. Richmond, especially since he is the sole caregiver for his son.   It is hard to understand how someone can live "off the grid" when he has a 16 year old son enrolled in school and he has maintained fulltime employment since 2007.

**Criminal History**

It is true that 23 years ago, when Mr. Richmond was 17 years old, he got into some trouble.   He was not prosecuted for it, but instead was accepted in a District Attorney's Pretrial Diversion Program.

It is also true that approximately 20 years ago, when he was 20 years old, while serving in the United States Army in Iraq, Mr. Richmond was found guilty of manslaughter and given a three year sentence. He was originally charged with murder and was facing a life sentence. The jury returned a verdict of manslaughter and he received a three year sentence. As the Pretrial Services Report reflects, he was released on parole and on August 4, 2007, he successfully completed his supervision.[4]

Finally, 12 years ago Mr. Richmond was involved in some type of altercation with his wife and was arrested. The District Attorney's Office nolle prossed the case.

For the past 12 years Mr. Richmond has not been arrested or charged with any criminal activity.

The Government's Motion goes into exquisite detail about the incidents which happened on January 6, 2021. Mr. Richmond is not on trial. This is a hearing under the Bail Reform Act to determine if there are conditions which can be imposed on Mr. Richmond to ensure that he is not a flight risk and to ensure the safety of the community. §3142(j) reads: "Nothing in this section shall be construed as modifying or limiting the presumption of innocence." And, as noted above, he has not been indicted by a Grand Jury.

**Bail Reform Act**

This is not a presumption case. §3142(e) sets forth two situations where it is presumed that no combination of conditions will reasonably assure the safety of any other person and the appearance of the defendant. That is not applicable here.

---

[4] This conviction is so old that if Mr. Richmond were to go to trial on these charges, it is doubtful that it would be admissible at trial. See FRE 609(b).

The Court has several options.  The first is release on personal recognizance or upon execution of an unsecured bond.  The second is release on a condition or combination of conditions.  Examples of conditions are set forth in §3142(c)(1).  Congress stated that these should be the "least restrictive" conditions.  However, as undersigned counsel told Magistrate Judge Wilder-Doomes, Mr. Richmond could and would abide by all of the conditions set forth in §3142(c).

**Flight Risk**

There is no persuasive evidence that Mr. Richmond is a flight risk.  The Government argues on page 17 of their Motion that Mr. Richmond did not "proactively approach the FBI and turn himself in."  This is not true. On 3 occasions we reached out to the FBI and the AUSA and no one responded to us.

Mr. Richmond has maintained fulltime employment since 2007.  He has lived in Baton Rouge.  He has a lease on an apartment.  He is a licensed electrician. He has filed taxes. He is also an officer in two of his father's companies.

However, the number one factor that shows that he is not a flight risk is his 16 year old son, Zade.  Unfortunately, Zade's mother is not involved in his life.  Edward is the sole provider and caregiver for Zade.  Even the FBI testified that they watched Mr. Richmond go to his son's football games.  On the morning he was arrested he had just dropped his son off at school.  It is ludicrous to suggest that Mr. Richmond was flee the jurisdiction of this Court or any Court and leave his son alone.[5]

---

[5] Zade's grandparents are elderly and live an hour and a half away.

**Danger to the Community**

The Government relies on antiquated incidents in Mr. Richmond's life to argue that he is a danger to the community.  His last criminal conduct was over 20 years ago, in 2004.  The burden on this element is clear and convincing evidence.  In *United States v. Munchel*, 991 F.3d 1273 (2021), the Court held that when the Government proves by clear and convincing evidence that an arrestee presents an *identified* and *articulable* threat to an individual or community, the Court may disable the arrestee from executing that threat.  However, as the Court in *Munchel* stated this threat "must be clearly identified." There is no current identified or articulable evidence that Mr. Richmond is a threat to any individual in the community.  Twenty years ago he was convicted of a crime of violence.  Three years ago, he was involved in the January 6th incident at the United States Capitol.  There is not one shred of evidence that in the last three years he has engaged in any type of violence or crimes.  He has simply worked and raised his son.

In *United States v. Patriarca*, 948 F.2d 789 (1st Cir. 1991) the Government was prosecuting an alleged Mafia boss on various RICO offenses.  The Court denied detention and remanded for further fact finding.  Importantly, the Court held that although *in theory* a Mafia boss can be an intimidating, highly dangerous character, the Government had not demonstrated that this boss posed a significant danger, or at least not a danger that could be overcome given appropriate conditions.  Likewise in this case the Government has a theory that Mr. Richmond could be a dangerous person but they have not demonstrated that he is a significant danger.

There are several other things this Court should take into consideration when deciding this matter. First, in no sense was Mr. Richmond a leader or organizer of any events which occurred on January 6th.

In *United States v. Tarrio*, 605 F.Supp.3d 73 (2022) the Court, citing *Munchel*, *supra* noted that those who "aided, conspired with, planned, or coordinated the events of January 6th are in a different category of dangerousness then many others present that day." *Tarrio* at p. 81. While the evidence shows that Mr. Richmond was there that day, the Government has put forth no evidence that he planned or coordinated the events.

As the prosecution alleges in their Motion, Mr. Richmond was near the lower west terrace tunnel starting at about 3:15 p.m. However, others, (not Mr. Richmond)first started breaking through the police lines **two hours** earlier at 1:00 p.m. (See attached Exhibit P which are pages from an application for search warrant filed by the United States Attorney's Office for the Middle District of Louisiana seeking a warrant to search Mr. Richmond's apartment.) The search warrant goes into detail about the events of January 6th. In paragraph 20 of this application, it reflects that at 2:00 p.m. people in the crowd forced their way over the barricades and shortly after 2:00 p.m. entered the Capitol Building. At 2:30 p.m., unknown subjects broke windows and pushed past the Capitol Police. As noted above, Mr. Richmond does not arrive until 3:15 p.m. and at no time did he go into the Capitol Building. He did not smash windows. He did not vandalize anything.

The Government also tries to lead this Court to believe that Mr. Richmond came to Washington, DC dressed in his gear for the sole purpose of storming the Capitol. Yet their own witness tells a different story. Confidential Witness (CW-1) was interviewed by the FBI on April 20, 2021. CW-1 stated she/he had traveled to DC from Ohio with a group of 9 other

individuals who planned to attend the rallies planned for the day.  (See <u>Exhibit Q</u> , pages 15,16, and pages 38 from the Government's Application for search warrant.) She/He identifies Richmond as a member of the security team she/he hired. Specifically, page 38 of the Application for Search Warrant reads: "Due to their experience at a prior political rally, CW-1 arranged for a group of individuals to provide security for CW-1 and their travel companions."

Edmond Richmond did not show up in Washington, DC on January 6th with the intent to attack the Capitol.  He was there to provide security to CW-1 and her entourage.

Nor did Mr. Richmond post anything on any social media, emails, podcasts, or the like, talking about, boasting, or bragging about what happened on January 6th.  *United States v. Farilamb,* 535 F.Supp.3d 30 (2021) where the defendant made numerous posts on Facebook and other social media platforms, bragging, and boasting about what he did.  He showed no remorse and said that he would do it again.  The Government has put forth no evidence against Mr. Richmond along those lines.[6]  Others who have been prosecuted in cases like this have done such things.  Mr. Richmond did not.  The federal prosecutors in Baton Rouge obtained a search warrant for Mr. Richmond's apartment in hopes that they would find some evidence of him participating in the January 6, 2021 events in Washington, DC.  In their search warrant they cite 28 examples of other people who were arrested and whose residences were searched. In those examples the agents found things like MAGA hats, goggles, helmets, gloves, jackets, and other gear.   A search of Mr. Richmond's apartment turned up none of those items.

---

[6] CW-1 (not Edward Richmond) is the person who posted pictures of herself/himself on social media.  See Criminal Complaint, page 3.

## CONCLUSION

If Mr. Richmond is released on conditions he will be required to report to a pretrial services officer.  He has already met with the officer twice.  If Mr. Richmond does not abide by any conditions, the Government may at any time while on release file a Motion for Revocation of the Order with the Court pursuant to 18 U.S.C. §3145(a).

> "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739 (1987).

> "There can be no doubt that this act [the Bail Reform Act] clearly favors non-detention.  *United States v. Byrd*, 969 F.2d 106 (5th Cir. 1992).

In this non-presumption case, the Government must prove by a preponderance of the evidence that Mr. Richmond is a flight risk and no condition or combination of conditions can overcome that.  They must also prove by clear and convincing evidence that Mr. Richmond presents an identified and articulable threat to an individual or the community.

The Government has not and cannot meet either burden.  Certainly, there are any number of conditions that this Court can impose on Mr. Richmond to reasonably assure his appearance and the safety of the community.

this case only.

**Respectfully Submitted by:**

*/s/David E. Kindermann*
**DAVID E. KINDERMANN**
Jezic & Moyse
Bar ID 419242
50 Citizens's Way, Ste, 300
Frederick, MD, 21701
Office: 717-621-2799
Fax: 717-621-2681
Cell: 301-762-7900
Email: dkindermann@jezicfirm.com
**LOCAL COUNSEL**

*/s/ John S. McLindon*
**JOHN S. MCLINDON**
Attorney at Law
Louisiana State Bar No. 19703
12345 Perkins Road, Bldg. 2 Ste 202
Baton Rouge, Louisiana 70810
Office: (225) 408-0362
Cell:    (225) 603-6493
Email: john@mclindonlaw.com
**APPLICANT FOR ADMISSION**
**PRO HAC VICE**

**CERTIFICATE OF SERVICE**

I hereby certify that under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and a copy of this **Memorandum of Edward Richmond, Jr. in Opposition to the Government's Emergency Motion for Stay and Review of Release Order** was delivered via electronic mail to Assistant US Attorney, Victoria A. Sheets, vsheets@usa.doj.gov  and any other known interested parties, on this the 26TH day of January, 2024.

*/s/John S. McLindon*
**JOHN S. MCLINDON**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

**UNITED STATES OF AMERICA**                    **Magistrate No. 24-MJ-6-UNA**

**-vs-**                                                            **AUSA:  Lyman E. Thornton, III**

**EDWARD RICHMOND, JR.**

---

| JUDGE: | **Erin Wilder-Doomes** | DATE: | **January 23, 2024** |
|---|---|---|---|
| DEPUTY CLERK: | **Brandy Lemelle Route** | TAPE/REPORTER: | |
| INTERPRETER: | | PRETRIAL/PROBATION: | **Joseph Molyneaux** |
| | | | **Megan L. Shields** |

---

**RULE 5(c)(3) HEARING**

John S. McLindon made an appearance on behalf of Defendant Edward Richmond, Jr.  ("Richmond").

Competency was established.  Richmond was advised of his rights and the purpose of this hearing on charges pending in the District of Columbia.

The defense waived formal reading. The court summarized the Criminal Complaint to Richmond, advising him of the substance of the pending charges.

The government moved for a detention hearing under 18 U.S.C. §3142(f)(1)(A) on the basis that the offense involves a crime of violence, 18 U.S.C. §3142(f)(1)(E) on the basis that the offense involves the possession of a dangerous weapon, and 18 U.S.C. §3142(f)(2)(A) on the basis that Richmond is a serious risk of flight based on attempts to evade law enforcement and lack of identification documentation.

Richmond was advised of his right to identity and preliminary hearings, and transfer of the case to this district under Fed. R. Crim. Proc. 20.

**DEFENDANT'S EXHIBIT**

**A**

Richmond completed the Waiver of Rule 5 and 5.1 Hearings, confirming waiver of identity and preliminary hearings and requesting that the detention hearing be held in the Middle District of Louisiana. The waiver was filed with the court.

The Court took judicial notice of the factual information contained in the bond report.

FBI Agent Chandler Hudsbeth was sworn and testified on behalf of the government.

Government Exhibits US-2, US-3-a, US-3-b, US-3-c and US-4 were offered and admitted without objection.

The defense cross-examined Agent Chandler Hudsbeth.

The government redirected.

Government Exhibit US-3d was offered and admitted without objection.

The government rested.

The Defense proffered information to the court.

Defense Exhibits D-1 through D-3 were offered and admitted without objection.

The parties presented argument.

The court took a recess to review admitted exhibits and to meet with the United States Pretrial Services Office.

In accordance with Fed. R. Crim. Proc. 5(f), the Court confirmed the United States' disclosure obligations pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, and ordered the government to comply. The government was advised that failure to comply may result in the imposition of consequences by the court. The government expressed understanding. A separate, order will also issue.

For oral reasons given, the court found that the government did not meet its burden of establishing by a preponderance of the evidence that Richmond is a risk of flight or by clear and convincing evidence that Richmond is a danger to others or the community because conditions exist that will reasonably assure his appearance and the safety of others and the community.

With regard to the risk of nonappearance, the government primarily relies on lack of a driver's license, expired Louisiana ID with an incorrect address, the change to his phone number shortly after the events of Jan. 6, 2021 and the fact that law enforcement went to several addresses available through open source while attempting to locate Richmond but did not find him at any of those. However, the defense provided documentation of attempts to contact law enforcement and the prosecutor involved in the case as early as January 2022 offering to put law enforcement in contact with Mr. Richmond (Defense Exh. D-1). While law enforcement undoubtedly had reasons for not accepting counsel's offer, having a lawyer contact law enforcement does not suggest an effort to flee or avoid prosecution. Also, having a minor child in high school for whom he appears to be the sole caregiver minimizes the risk that Richmond would attempt to flee.

While nature and circumstances of the offense and weight of the evidence weigh in favor of detention, history and characteristics of the defendant is neutral with information weighing in favor of and against release. With regard to the nature and seriousness of the danger Richmond poses overall, on one hand Richmond appears to be a loving father to his son. On the other, he has a conviction for a crime of violence from 2005 and he is currently charged with a crime of violence. However, the government appears to have had information for two years that could have allowed it to contact with Richmond sooner. Again, while there

may be good reasons for the government not to move quickly, that certainly suggests that Richmond may not be the threat the government now argues he is.  Finally, regarding Richmond's alleged firearm possession as a prohibited person, any release conditions would necessarily include a restriction from the possession of firearms.

      Edward Richmond, Jr. was ordered **RELEASED** with conditions.

      The court reviewed the conditions of release with Richmond, which he signed.  The court then reviewed the consequences of a release violation.

************

**John McLindon**

| | |
|---|---|
| **From:** | John McLindon |
| **Sent:** | Tuesday, January 25, 2022 12:07 PM |
| **To:** | Kaitlan Carey |
| **Cc:** | Tina Truett |
| **Subject:** | RE: contact inko |

Thank you



## John McLindon

12345 Perkins Road, Building 2-Suite 202,Baton Rouge,LA,70810

mclindon@lawbr.net

**Tel:** 225.408.0362  **Fax:** 877.241.2631

www.lawbr.net

*CONFIDENTIALITY NOTICE: The information contained in this electronic message, including any attachment hereto, is privileged and confidential information intended only for the use of the individual entity or entities named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or reproduction of this communication is strictly prohibited. If received in error, please notify me immediately and delete all content. Thank you.*

**From:** Kaitlan Carey <KCAREY2@fbi.gov>
**Sent:** Tuesday, January 25, 2022 12:06 PM
**To:** John McLindon <mclindon@lawbr.net>
**Cc:** Tina Truett <tina@lawbr.net>
**Subject:** RE: contact inko

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good afternoon,

The case agent is Heang Ly. His email is hly@fbi.gov

Thank you,

Katie

**From:** John McLindon <mclindon@lawbr.net>
**Sent:** Monday, January 24, 2022 3:35 PM
**To:** Carey, Kaitlan (NO) (FBI) <KCAREY2@fbi.gov>
**Cc:** Tina Truett <tina@lawbr.net>
**Subject:** [EXTERNAL EMAIL] - contact inko



Hello Special Agent Carey: I was contacted by Edward Richmond, who I believe you were trying to locate last week. Please give me a call if you still want to talk to him. Thanks



## John McLindon

12345 Perkins Road, Building 2-Suite 202,Baton Rouge,LA,70810

mclindon@lawbr.net

**Tel:** 225.408.0362   **Fax:** 877.241.2631

www.lawbr.net

CONFIDENTIALITY NOTICE: The information contained in this electronic message, including any attachment hereto, is privileged and confidential information intended only for the use of the individual entity or entities named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or reproduction of this communication is strictly prohibited. If received in error, please notify me immediately and delete all content. Thank you.

**John McLindon**



| | |
|---|---|
| **From:** | John McLindon |
| **Sent:** | Tuesday, January 25, 2022 3:54 PM |
| **To:** | hly@fbi.gov |
| **Cc:** | Tina Truett |
| **Subject:** | Edward Richmond |

Agent Richmond: I met with Edward Richmond yesterday. He told me that someone from the FBI was looking for him. I reached out to Agent Carey in the New Orleans office and she gave me your contact information. If you are still interested in talking to Mr. Richmond, please give me a call . Thank you.



## John McLindon

12345 Perkins Road, Building 2-Suite 202, Baton Rouge, LA, 70810

mclindon@lawbr.net

**Tel:** 225.408.0362   **Fax:** 877.241.2631

www.lawbr.net

CONFIDENTIALITY NOTICE: The information contained in this electronic message, including any attachment hereto, is privileged and confidential information intended only for the use of the individual entity or entities named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or reproduction of this communication is strictly prohibited. If received in error, please notify me immediately and delete all content. Thank you.



DEFENDANT'S
EXHIBIT
C

1

US v. Edward Richmod 23-mj-239-ZMF-JEB          Exhibit C    Page 1 of 1

**John McLindon**

| | |
|---|---|
| **From:** | Tina Truett |
| **Sent:** | Tuesday, June 20, 2023 12:22 PM |
| **To:** | John McLindon |
| **Subject:** | FW: Victoria Anne Sheets |
| **Attachments:** | Victoria Anne Sheets |

**Tina Truett**
*Paralegal*
Law Office of John S. McLindon

Privileged:  This e-mail message contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the specific individual or entity named above. If you or your employer is not the intended recipient of this e-mail or an employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any unauthorized dissemination or copying of this e-mail is strictly prohibited. If you have received this transmission in error, please immediately delete the message.



DEFENDANT'S
EXHIBIT
**D**

Driver License Status Inquiry



**Louisiana Department of Public Safety**
**Office of Motor Vehicles**
**P.O. Box 64886**
**Baton Rouge, Louisiana 70896**

**Louisiana Office of Motor Vehicles Driver Reinstatement Status**

DRIVER'S LICENSE NUMBER -      6716

YOUR VEHICLE REGISTRATION AND DRIVER'S LICENSE ARE BLOCKED BECAUSE OUR
RECORDS SHOW POLICY NUMBER 941457835 WITH
PROGRESSIVE PALOVERDE INSURANCE COMPANY ON YOUR 2000 TOYT VIN#
4TASN92N7YZ613002 CANCELLED ON 11/08/2022. SINCE THE VEHICLE WAS
DISPOSED OF MORE THAN 10 DAYS AFTER THE POLICY CANCELLED, YOU
MUST PAY OMV A REINSTATEMENT FEE OF $525.00 IN ORDER TO REINSTATE THIS
BLOCK.

IF YOU HAVE MORE THAN ONE CANCELLATION, AND YOU REINSTATE YOUR CANCELLATIONS
ON THE SAME DAY, THE MAXIMUM REINSTATEMENT FEE FOR ALL CANCELLATIONS WILL BE
$850.00 PLUS AN ADDITIONAL $25.00 ADMINISTRATIVE FEE PER CANCELLATION.

HOWEVER, THE MAXIMUM FEE OF $850.00 DOES NOT APPLY TO ANY CANCELLATIONS THAT
HAVE BEEN FORWARDED TO THE OFFICE OF DEBT RECOVERY. IN THE LATER CASE, ALL
FEES ARE OWED WITHOUT ANY REDUCTION OR LIMIT EVEN IF MULTIPLE CANCELLATIONS
ARE CLEARED ON THE SAME DAY.

R.S.32:429 AUTHORIZES AN ADDITIONAL OFFICE FEE TO BE ASSESSED FOR
REINSTATEMENTS PROCESSED BY CERTAIN MOTOR VEHICLE OFFICES.

WE HAVE PROVIDED YOU WITH THE REINSTATEMENT REQUIREMENTS OF THE DRIVING
RECORD YOU REQUESTED. IN THE EVENT YOU HAVE RECEIVED VIOLATIONS THAT DID
NOT CONTAIN SUFFICIENT INFORMATION FOR OUR OFFICE TO ASSOCIATE WITH THIS
DRIVING RECORD, ADDITIONAL REQUIREMENTS MAY BE REQUIRED FOR CLEARANCE. THIS
STATUS LETTER REFLECTS YOUR DRIVING RECORD AT THIS TIME AND IS SUBJECT TO
CHANGE IF ADDITIONAL INFORMATION IS RECEIVED.

HOME

PRINT



DEFENDANT'S
EXHIBIT
E

US v. Edward Richmond  23-mj-239  ZMF-JEB                    Exhibit E   Page 1 of 2

**DEPT OF PUBLIC SAFETY & CORRECTIONS,**
**PUBLIC SAFETY SERVICES OFFICE OF MOTOR VEHICLES**

--------------------------------------------------------------------------------

Mailing Address:
Office of Motor Vehicles
P.O. Box 64886
Baton Rouge, LA 70896

Physical Address:
Office of Motor Vehicles
7979 Independence Blvd.
Baton Rouge, LA 70806

*louisiana.gov*

--------------------------------------------------------------------------------

Technical Support:
888-214-5367

Don't Drink and Drive
## Louisiana
Don't Litter Louisiana

### IDENTIFICATION CARD

NOT FOR
FEDERAL
IDENTIFICATION

DOB ████83
ISSUE DATE 03-16-2023
AUDIT 8154
OFFICE 32
PARISH 17
SEX M
HGT ████
WGT
EYES HAZ   DONOR

RICHMOND
EDWARD LYNN, JR

BATON ROUGE, LA 70817-0000

LICENSE/ID NO    CLASS    EXPIRATION DATE
████419    I    03-16-2029

THIS IS NOT A
DRIVER'S LICENSE



DEFENDANT'S
EXHIBIT
F





US v. Edward Richmod 23-mj-239-ZMF-JEB                    Exhibit G     Page 1 of 1

Case 1:23-mj-00239-ZMF   Document 11   Filed 01/29/24   Page 26 of 46

✈ 600 North Street, Baton Rouge, 70802   📞 (225) 765-2301   💬 Text-To-Verify: 1 (855) 999-7896   

## Louisiana State Licensing Board for Contractors

### Contractor Information

| | |
|---|---|
| **Business Name** | Baton Rouge Air, LLC |
| **Mailing Address** | ████████████ Maurepas, LA 70449 |
| **Phone Number** | ████████53 |
| **Email Address** | ████████ard@icloud.com |
| **Website** | http://batonrougeair.com |

### Active Licenses

| | |
|---|---|
| **License Number** | ███0 |
| **Type** | Commercial License |
| **Status** | LICENSED |
| **Effective** | 05/01/2023 |
| **Expiration** | 04/16/2026 |
| **First Issued** | 04/16/2021 |

### Classifications

| Class | Qualifying Party |
|---|---|
| ELECTRICAL | Edward Lynn Richmond Jr. |
| MECHANICAL | Edward Lynn Richmond Sr. |
| SOLAR ENERGY EQUIPMENT | Edward Lynn Richmond Sr. |



DEFENDANT'S EXHIBIT
H
tabbies

US v. Edward Richmod 23-mj-239-ZMF-JEB                    Exhibit H   Page 1 of 1

State of
Louisiana
Secretary of
State

**COMMERCIAL DIVISION**
**225.925.4704**



Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

| Name | Type | City | Status |
|------|------|------|--------|
| BATON ROUGE AIR LLC | Limited Liability Company | MAUREPAS | Active |

**Previous Names**

| | |
|---|---|
| **Business:** | BATON ROUGE AIR LLC |
| **Charter Number:** | ███76K |
| **Registration Date:** | 2/15/2021 |
| **Domicile Address** | |

████████████████
MAUREPAS, LA 70449

**Mailing Address**

████████████████
MAUREPAS, LA 70449

## Status

| | |
|---|---|
| **Status:** | **Active** |
| **Annual Report Status:** | **In Good Standing** |
| **File Date:** | 2/15/2021 |
| **Last Report Filed:** | 1/24/2024 |
| **Type:** | Limited Liability Company |

## Registered Agent(s)

| | |
|---|---|
| **Agent:** | EDWARD RICHMOND |
| **Address 1:** | ████████████████ |
| **City, State, Zip:** | MAUREPAS, LA 70449 |
| **Appointment Date:** | 2/15/2021 |

## Officer(s)

Additional Officers: No

| | |
|---|---|
| **Officer:** | DARCE RICHMOND |
| **Title:** | Manager, Member |
| **Address 1:** | ████████████████ |
| **City, State, Zip:** | MAUREPAS, LA 70449 |

| | |
|---|---|
| **Officer:** | EDWARD RICHMOND |
| **Title:** | Member |
| **Address 1:** | ████████████████ |
| **City, State, Zip:** | MAUREPAS, LA 70449 |

| | |
|---|---|
| **Officer:** | EDWARD RICHMOND, JR. |

DEFENDANT'S
EXHIBIT
I

| | |
|---|---|
| **Title:** | Member |
| **Address 1:** | ██████████████ |
| **City, State, Zip:** | BATON ROUGE, LA 70817 |

## Amendments on File
**No Amendments on file**

[ **Print** ]

# STATE OF LOUISIANA

## CERTIFICATE OF TITLE

| VIN | | TITLE NUMBER | | DATE ISSUED |
|---|---|---|---|---|
| ▮6660 | | ▮2744 | | 11/05/2020 |

| MAKE | MODEL | BODY | COLOR | YR | DATE ACQUIRED | ODOMETER | N/U |
|---|---|---|---|---|---|---|---|
| FORD | | PK | GRY/ | 2016 | 04/01/2016 | 5 | N |

```
* *   MAIL TO   * *                                    CL

SOLAR SOLUTIONS LLC

▮▮▮
MAUREPAS LA              70449

* *   OWNER   * *
SOLAR SOLUTIONS LLC

▮▮▮
MAUREPAS          LA    70449
```

| (LIEN) | DATE |
|---|---|

First Lien Released _____
Date

Lienholder

By _____
Authorized Representative

Second Lien Released _____
Date

Lienholder

By _____
Authorized Representative

The undersigned as Vehicle Commissioner
of the State of Louisiana, certifies that the
applicant named herein has been duly
registered in this office as owner of the
motor vehicle described, pursuant to the
laws of the State of Louisiana, subject to
the mortgages and encumbrances, if any,
herein set forth.

In witness whereof, I have affixed my
signature at Baton Rouge.

*Karen G. St. Germain*

**DEFENDANT'S EXHIBIT**

J

```
FORM      2130      A   2130                      ▮▮▮34
```

DPSMV 1663 (R7/07)

ANY ALTERATION OR ERASURE VOIDS THIS DOCUMENT.

KEEP IN SAFE PLACE

or Dangerous Weapon); 18 U.S.C. § 1752(a)(4) and (b)(1)(A) (Engaging In Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon), and 40 U.S.C. § 5104(e)(2)(F) (Engaging In Physical Act of Violence in Grounds or Capitol Building) (the "Target Offenses") have been committed by RICHMOND and other identified and unidentified persons.

56.    There is also probable cause to search the PREMISES, further described in Attachment A, for the things described in Attachment B.

57.    On September 29, 2023, FBI conducted surveillance on Edward RICHMOND Jr. That evening, between the hours of 6:01 PM and 10:40 PM, RICHMOND was observed by law enforcement driving a gray Ford F-150 truck with Louisiana license plate ███377.  The vehicle is registered to Solar Solutions LLC at 11639 Homeport Drive, Maurepas, LA 70449. RICHMOND is one of the registered officers of Solar Solutions LLC. At approximately 10:40 PM, RICHMOND was observed in his vehicle parked in the parking lot in front of 761 W. K. Gordon Street, Baton Rouge, Louisiana.  At approximately, 10:50 PM, an individual matching the description of RICHMOND was standing on the balcony outside of apartment 4.  On December 6, 2023, FBI agents interviewed members of the apartment management team that owns 761 W.K. Gordon Street, Triad Group LLC.  A representative of Triad Group LLC informed a law enforcement agent that RICHMOND occupies Apartment 4 of 761 W. K. Gordon Street in Baton Rouge, Louisiana.  On January 5, 2024, law enforcement observed RICHMOND's vehicle parked and vacant in the parking lot of the 761 W. K. Gordon Street, Baton Rouge, LA. Based upon the surveillance conducted by FBI, and the interview conducted



DEFENDANT'S
EXHIBIT

K

US v. Edward Richmod 23-mj-239-ZMF-JEB                    Exhibit K  Page 1 of 1

**State of Louisiana Secretary of State**



**COMMERCIAL DIVISION**
**225.925.4704**

Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

| Name | Type | City | Status |
|------|------|------|--------|
| SOLAR SOLUTIONS, LLC | Limited Liability Company | MAUREPAS | Active |

**Previous Names**

**Business:** SOLAR SOLUTIONS, LLC
**Charter Number:** ███████
**Registration Date:** 4/24/2009
**Domicile Address**
███████████
MAUREPAS, LA 70449
**Mailing Address**
C/O EDWARD L. RICHMOND
███████████
MAUREPAS, LA 70449

## Status

| | |
|---|---|
| **Status:** | **Active** |
| **Annual Report Status:** | **In Good Standing** |
| **File Date:** | 4/24/2009 |
| **Last Report Filed:** | 4/3/2023 |
| **Type:** | Limited Liability Company |

## Registered Agent(s)

| Agent: | EDWARD L. RICHMOND |
|--------|--------------------|
| **Address 1:** | █████████ |
| **City, State, Zip:** | MAUREPAS, LA 70449 |
| **Appointment Date:** | 4/24/2009 |

## Officer(s)                                    Additional Officers: No

| Officer: | EDWARD L. RICHMOND |
|----------|--------------------|
| **Title:** | Manager, Member |
| **Address 1:** | █████████ |
| **City, State, Zip:** | MAUREPAS, LA 70449 |

| Officer: | EDWARD RICHMOND, JR |
|----------|---------------------|
| **Title:** | Member |
| **Address 1:** | █████████ |
| **City, State, Zip:** | BATON ROUGE, LA 70817 |

DEFENDANT'S
EXHIBIT
L

| Officer: | DARCE RICHMOND |
|---|---|
| Title: | Member |
| Address 1: | ███████████ |
| City, State, Zip: | MAUREPAS, LA 70449 |

## Amendments on File (1)

| Description | Date |
|---|---|
| Domestic LLC Agent/Domicile Change | 3/11/2021 |

**Print**

**STANDARD LEASE**

DATE: _Jan. 5, 2023_

**PARTIES** – **PELICAN PROPERTIES & INVESTMENTS, INC.** (hereinafter referred to as **Lessor**) hereby leases to:

_Edward Richmond, Jr._ (hereinafter referred

to as **Lessee**) the following described property.

**PREMISES** – Apartment No. /House Address _4_ located at _761 W.K. Gordon_ in **BATON ROUGE, LA.** _70807_ . For use by resident as a private residence only.
TERM - _Month - to - month_ is the commencing

date of this Leases term and this lease ends on _____.

**AUTOMATIC RENEWAL** – If Lessee or Lessor, desires that this Lease terminate at the expiration of its term, he must give to the other written notice at least **30 days** prior to that date. Failure of either party to give this required notice will automatically renew this Lease on a month to month basis. If this Lease automatically renews on a month to month basis then if Lessee or Lessor desires that this lease terminate he must give to the other written notice of the termination at least 30 days prior to the last calendar day of the month in which the Lease is to terminate. If this Lease automatically renews on a month to month basis then all terms and conditions of this Lease remain in effect.

**RENT** - _Six Hundred Fifty_ ___00/100_ (S _650._ ) DOLLARS per month shall be the rental which shall be payable in advance on the first day of each month. The rent shall be paid at:

_761 W.K. Gordon_

Rent not received by the first of the month shall be considered delinquent. Should Lessor agree to accept rent after that date then Lessor may

charge a late fee of: _$75.00_ .

Acceptance of rent after the due date shall not be considered as a waiver of relinquishment of any of the other rights and remedies of Lessor. Rent may not be paid in cash unless Lessor specifically agrees in writing. **Lessor will accept Money Orders or Cashier's Checks only for payment of rent.**

$ _0_ has been paid by Lessee to Lessor which is prorated rental from the date of the commencement of this Lease to the first day of the following month.

**SECURITY DEPOSIT** _Four Hundred_ ___00/100_ (S _400.00_ ) DOLLARS has been deposited by Lessee with Lessor receipt of which is acknowledged. The deposit which is noninterest bearing is to be held by Lessor as security for the full and faithful performance of all the terms and conditions of this Lease and any renewals of this Lease. The security deposit is not an advance rental and Lessee may not deduct any portion from the rent due to Lessor. In the event of forfeiture of the security deposit due to Lessee's failure to fully and faithfully perform all the terms and conditions of the Lease. Lessor retains all of his other rights and remedies. Lessee does not have the right to cancel this Lease and avoid his obligations thereunder by forfeiting the said security deposit.

Lessee shall be entitled to return of said security deposit within 30 days after the premises have been vacated and inspected by Lessor provided said Leased premises are returned in good condition as they were at the time Lessee first occupied same, subject only to normal wear and tear and after all keys are surrendered to Lessor. Lessor agrees to deliver the premises clean and free of trash at the beginning of this Lease and Lessee agrees to return same in like condition at the termination of the Lease.

Unless otherwise specifically provided for herein, Lessee shall not make any repairs to the leased premises. Lessor shall make all repairs to the leased premises within a reasonable time after written notice delivered by Lessee to Lessor.

In the event of any damage to the leased premises or equipment therein, reasonable wear and tear excepted caused by Lessee, his family, guest or agents, Lessee agrees to pay Lessor when billed the full amount necessary to repair or replace the damaged premises or equipment as agreed to on the CHECKIN/CHECKOUT LIST attached hereto and made a part of this Lease.

Deductions will be made from the security deposit to reimburse Lessor for the cost of repairing any damage to the premises or equipment or the cost of replacing any of the articles or equipment that may be damaged beyond repair, lost or missing at the termination of the Lease. Deductions will also be made to cover any unpaid amounts owed to Lessor for any such damages or loss occurring prior to termination of the Lease and for which Lessee has been billed. In the event that such damages or cleaning charges exceed the amount of the security deposit.

Lessee agrees to pay all excess costs to Lessor. In the event there has been a for forfeiture of the security deposit, charges for damages and cleaning shall be paid in addition to the amount of the said security deposit. Notwithstanding any other provisions expressed or implied herein, it is specifically understood and agreed that the entire security deposit aforesaid shall be automatically forfeited as a set off should Lessee vacate or abandon the premises before the expiration of this Lease, except where such abandonment occurs during the last month of the term of the Lease. Lessee has paid all rent covering the entire and either party has given the other timely written notice that this Lease will not be renewed under its automatic renewal provisions.

**MAINTAINING UTILITY SERVICE** – Lessee must maintain at all times electrical services to the Leased premises at Lessee's expense. Failure to maintain such service(s) for two (2) consecutive days shall be deemed to be a breach hereunder. Further, Lessor is entitled to, but not obligated to obtain such services to the Leased premises and charge Lessee the expense of obtaining and maintaining the service(s).

**OCCUPANTS** – The leased premises shall be occupied as a residence by the following persons only:

_Zade Richmond_

**DEFENDANT'S EXHIBIT M**

**PETS** – NO PETS are allowed to live on the premises at any time.

**SUB LEASE** – Lessee is not permitted to post any "For Rent" signs, rent, sublet or grant use or possession of the leased premises in any manner.

**DEFAULT OR ABANDONMENT** - Should Lessee fail to pay the rent or any other charges arising under his Lease promptly as stipulated or should voluntary or involuntary bankruptcy proceedings be commenced by or against Lessee or should Lessee discontinue the use of the premises for the purposes for which they are rented or should Lessee's or any of Lessee's quest or invites fail to maintain a standard of behavior consist with the consideration necessary to provide reasonable safety, peace and quiet to the other residents in the apartment community such as being boisterous

or disorderly, creating undue noise, disturbance or nuisance of any nature or kind, engaging in an unlawful or immoral activities, or should Lessee breach any of the rules and or regulations as referred to further herein, or should Lessee breach any other covenant of this Lease, Lessee shall be ipso facto in default, without the necessity of demand or putting in default. In the event of default hereunder, Lessor may elect any remedy allowed under Louisiana Law, including but not limited to declaring the rent for the whole unexpired term of the Lease together with the Attorney's fees immediately due and eligible, or to proceed one or more times for past due installments without prejudicing his right to proceed later for the rent for the remaining term of the lease and or cancel the Lease and obtain possession of the premises.

**WAIVER OF NOTICE** – Lessee specifically waives the requirement of the five day notice to vacate as forth in the Revised Civil Code of the State of Louisiana and under the Code of Civil Procedure as they may be amended.

**RULES AND REGULATIONS** – Lessee acknowledges receipt of a copy of the rules and regulations which are attached to and form a part of his Leases. Lessee agrees to comply with all such rules and regulations and with all reasonable rules and regulations hereafter adopted by the Lessor and posted in or about the apartment community and or mailed or delivered to Lessee.

**CONDITION OF PREMISES** – Lessor has delivered the leased premises in good condition. Lessee accepts them in good condition and agrees to keep them in such condition during the term of his lease at his expense and to return them to Lessor in the same condition as the termination of the lease, normal decay, wear and tear excepted.

**OCCUPANCY** – Should Lessee be unable to obtain occupancy on the date of the beginning of the lease due to causes beyond control of Lessor, the lease should not be affected thereby, but Lessee shall owe rent beginning only with the day on which he can obtain possession.

Should the property be destroyed or materially damaged so as to render it wholly unfit for occupancy by fire or other unforeseen event not due to any fault or neglect of Lessee, the Lessee shall be entitled to a credit for the unexpired term of the lease. However, Lessee shall not be entitled to a reduction of the monthly rent or cancellation of this lease because of a temporary failure of utilities, air conditioning or other amenities.

**ADDITIONS AND ALTERATIONS** - Neither Lessor nor Lessee shall make any additions or alterations to the premises without written permission of the other. However, Lessor or his employees shall have the right to enter the premises for the purpose of making repairs necessary to the preservation of the property. Any additions made to the property by the Lessee shall become the property of Lessor without compensation to Lessee at the termination of this lease unless otherwise stipulated herein. Nothing herein shall be construed to prevent Lessor from making improvements or conducing repairs at any other place other than the premises as defined hereinabove No holes shall be drilled in the walls, woodwork or floors and no antenna installations are permitted on roof or anywhere on premises. No foil in window. No hurricane tape to stay in windows after danger ceases.

**LIABILITY** – If any employee or Lessor renders any other services (such as parking, washing or delivery of automobiles, handling of furniture or other articles, cleaning the rented premises, package delivery, or any other service) for or at the request of resident, his family, employees or guests then, for the purpose of such service, such employees shall be deemed the servant of Lessee, regardless of whether or not payment is arranged for such service and Lessee agrees to relieve Lessor and hold Lessor harmless from any and all liability in connection with such services.

The Lessor shall not be liable to Lessee, or to Lessee's employees, patrons and visitors, or to any other persons for any damage to person or property caused by any act, omission or neglect of Lessee or any other tenant of said demised premises, and Lessee agrees to hold Lessor harmless from all claims for any such damage, whether the injury occurs on or off the leased premises. Lessee has inspected the premises and assumes responsibility for their condition. Lessor shall not be liable for injury caused by any defect therein to the Lessee or anyone on the premises who derives his right to be thereon from the Lessee, unless the Lessee knew or should have known of the defect or had received notice thereof and failed to promptly remedy it within a reasonable time. Should Lessee fail to promptly so notify Lessor in writing of any such defects, Lessee will become responsible for damage resulting to Lessor or other parties. Lessor will not be responsible for damage caused by leaks in the roof, by bursting of pipes by freezing or otherwise, or any vices or defects of the leased property, or the consequences thereof.

**SIGNS AND ACCESS** – Lessor reserves the right to post on the premises "For Sale" or "For Rent" signs at all times. Lessee will allow parties authorized by Lessor to visit the premises at reasonable hours in view of buying the property at any time during this leas term or in view of renting for 30 days prior to the expiration of this lease. Lessee will also permit Lessor to have access to the premises for the purpose of inspection at reasonable intervals between the hours of:   8    A.M. to   8    P.M.

**ATTORNEY'S FEES** – Lessee further agrees that if any Attorney is employed to protect any rights of the Lessor hereunder. Lessee will pay the fee of such Attorney. Such fee is hereby fixed at twenty-five (25%) percent of the amount claimed or a minimum of $500.00 whichever is greater. Lessee further agrees to pay all court costs and sheriff's charges if any.

**OTHER** – The failure of Lessor to insist upon the strict performance of the terms, covenants, agreements and conditions hereby contained, or any of them shall not constitute or be construed as a waiver or relinquishment of the Lessor's right thereafter to enforce any such terms, covenant, agreement and condition, but the same shall continue in full force and effect. It is understood that the terms "Lessor" and "Lessee" are used in this agreement, and they shall include the plural and shall apply to persons, both male and females. All obligations of Lessee are several and in solido.

This lease, whether or not recorded, shall be junior and subordinate to any mortgage hereafter placed by the Lessor on the entire property of which the leased premises form a part.

**OTHER CONDITIONS:**

1. Lessee is required to replace or clean air conditioner filters monthly. Failure to do so will result in costly repairs which will be charged to Lessee.
2. Lessor shall not be responsible for unclogging sewer or drain if such clogging was caused by Lessee putting or permitting foreign objects to be placed in the drain. ( any material the drain was not designed to accommodate)
3. Lessor reserves the right to adjust the rent before the end of the Lease with proper notice.
4. *Utilities Included*

**PLEASE READ YOUR LEASE BEFORE SIGNING**
**EXECUTED IN DUPLICATE**

*1784-79th*
At office: ~~1570 79~~th Avenue, Baton Rouge, LA, 70807

_____
LESSOR or Agent for Lessor

this   5th   day of   Jan.   , 2023 .

_____
LESSEE

X_____
LESSEE



April 26, 2023                                                    Page **1** of 4

(NOT FOR PAYMENTS)
DEPARTMENT # 102430
PO BOX 1259
OAKS, PA 19456
6400 0210  NO RP 26 04262023 NNNNNNNY 01 994902

Edward Richmond

BATON ROUGE LA 70807-3761

**CONTACT US:**     cox.com/chat

 cox.com/mybill

225-615-1000

Account Number          **7414**
COX PIN
SERVICE ADDRESS

BATON ROUGE, LA 70807-3761



## ACCOUNT SUMMARY as of Apr 26, 2023

| | |
|---|---|
| Previous Balance | $0.00 |
| **Remaining Previous Balance** | $0.00 |
| **New Charges: Apr 26, 2023 - May 25, 2023** | |
| Internet | $133.98 |
| One Time Charges and Credits | $94.00 |
| Taxes, Fees and Surcharges | $1.67 |
| New Charges | $229.65 |
| **Total Due By May 18, 2023** | **$229.65** |

**New Cox Mobile is officially here.** If you're feeling overlooked by your mobile company, now is the perfect time to make the switch. Learn more at cox.com/mobile or by visiting your local Cox Store. We're different because you're different.

 Thank you for being a Cox Paperless customer!



*Save Time! Save Money! Take control! Enroll in EasyPay - once you set it you'll never forget it. Your bill is automatically paid each month on the day it's due. Sign up today at www.cox.com/ibill!*

April 26, 2023 bill for Edward Richmond
Account Number
Service at

BATON ROUGE, LA 70807-3761

Total Due By May 18, 2023                              $229.65

(NOT FOR CORRESPONDENCE)
COX COMMUNICATIONS
PO BOX 9001079
LOUISVILLE, KY 40290-1079


DEFENDANT'S
EXHIBIT
N

**COX**



December 26, 2023                                    Page **1** of 4

(NOT FOR PAYMENTS)
DEPARTMENT # 102430
PO BOX 1259
OAKS, PA 19456
6400 0210  NO RP 26 12262023 YNNNNNNY 01 996341

Edward Richmond
█████████████████████
BATON ROUGE LA 70807-3761

**CONTACT US:**    cox.com/chat

cox.com/mybill

Account Number    ████████████
COX PIN                    ████████
SERVICE ADDRESS  ████████████



### ACCOUNT SUMMARY as of Dec 26, 2023

| | |
|---|---|
| Previous Balance | $75.66 |
| **Remaining Previous Balance** | **$75.66** |
| **New Charges: Dec 26, 2023 - Jan 25, 2024** | |
| Internet | $103.99 |
| One Time Charges and Credits | -$30.00 |
| Taxes, Fees and Surcharges | $1.67 |
| New Charges | $75.66 |
| **Total Due By Jan 17, 2024** | **$151.32** |

The rate you pay for your service may be changing on **your next bill.** Please see News From Cox or the Bill Messaging Center on Cox.com for details.

Thank you for being a Cox Paperless customer!

**COX.**

*Save Time! Save Money! Take control! Enroll in EasyPay - once you set it you'll never forget it. Your bill is automatically paid each month on the day it's due. Sign up today at www.cox.com/ibill!*

December 26, 2023 bill for Edward Richmond
Account Number    ████████████
Service at               ████████████

BATON ROUGE, LA 70807-3761

**Total Due By Jan 17, 2024**                    **$151.32**

(NOT FOR CORRESPONDENCE)
COX COMMUNICATIONS
PO BOX 9001079
LOUISVILLE, KY 40290-1079



FEDERALLY DECLARED DISASTER

| Form **1040** | Department of the Treasury—Internal Revenue Service (99) | **2021** | OMB No. 1545-0074 | IRS Use Only—Do not write or staple in this space. |
|---|---|---|---|---|
| | **U.S. Individual Income Tax Return** | | | |

**Filing Status**
Check only one box.

☐ Single ☐ Married filing jointly ☐ Married filing separately (MFS) ☒ Head of household (HOH) ☐ Qualifying widow(er) (QW)

If you checked the MFS box, enter the name of your spouse. If you checked the HOH or QW box, enter the child's name if the qualifying person is a child but not your dependent ▶

| Your first name and middle initial | Last name | Your social security number |
|---|---|---|
| Edward   L | Richmond   JR | ___-__-0403 |

If joint return, spouse's first name and middle initial | Last name | Spouse's social security number

Home address (number and street). If you have a P.O. box, see instructions.
_____ Ave    | Apt. no.

City, town, or post office. If you have a foreign address, also complete spaces below. | State | ZIP code
Baton Rouge | LA | 70817

Foreign country name | Foreign province/state/county | Foreign postal code

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund. ☐ You ☐ Spouse

At any time during 2021, did you receive, sell, exchange, or otherwise dispose of any financial interest in any virtual currency? ☐ Yes ☒ No

**Standard Deduction**

Someone can claim: ☐ You as a dependent ☐ Your spouse as a dependent
☐ Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness** You: ☐ Were born before January 2, 1957 ☐ Are blind   **Spouse:** ☐ Was born before January 2, 1957 ☐ Is blind

**Dependents** (see instructions):

If more than four dependents, see instructions and check here ▶ ☐

| (1) First name   Last name | (2) Social security number | (3) Relationship to you | (4) Child tax credit | Credit for other dependents |
|---|---|---|---|---|
| ZADE   RICHMOND | ___-__-4796 | Son | ☒ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |

Attach Sch. B if required.

| | | | Amount |
|---|---|---|---|
| **1** | Wages, salaries, tips, etc. Attach Form(s) W-2 | **1** | 0 |
| **2a** | Tax-exempt interest ........ **2a** [0]   **b** Taxable interest | **2b** | 0 |
| **3a** | Qualified dividends ........ **3a** [0]   **b** Ordinary dividends | **3b** | 0 |
| **4a** | IRA distributions ........ **4a**   **b** Taxable amount | **4b** | 0 |
| **5a** | Pensions and annuities ...... **5a**   **b** Taxable amount | **5b** | 0 |
| **6a** | Social security benefits ...... **6a**   **b** Taxable amount | **6b** | |
| **7** | Capital gain or (loss). Attach Schedule D if required. If not required, check here ....... ▶ ☐ | **7** | 37,883 |
| **8** | Other income from Schedule 1, line 10 | **8** | −437 |
| **9** | Add lines 1, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your **total income** ▶ | **9** | 37,446 |
| **10** | Adjustments to income from Schedule 1, line 26 | **10** | 0 |
| **11** | Subtract line 10 from line 9. This is your **adjusted gross income** ▶ | **11** | 37,446 |
| **12a** | Standard deduction or itemized deductions (from Schedule A) ... **12a** [18,800] | | |
| **b** | Charitable contributions if you take the standard deduction (see instructions) **12b** [0] | | |
| **c** | Add lines 12a and 12b | **12c** | 18,800 |
| **13** | Qualified business income deduction from Form 8995 or Form 8995-A | **13** | 0 |
| **14** | Add lines 12c and 13 | **14** | 18,800 |
| **15** | **Taxable income.** Subtract line 14 from line 11. If zero or less, enter -0- ........ | **15** | 18,646 |

**Standard Deduction for-**
- Single or Married filing separately, $12,550
- Married filing jointly or Qualifying widow(er), $25,100
- Head of household, $18,800
- If you checked any box under *Standard Deduction,* see instructions.

KIA   For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.   Form **1040** (2021)

DEFENDANT'S EXHIBIT O

Form 1040 (2021)                                                                                           Page **2**

| | | | |
|---|---|---|---|
| 16 | Tax (see instructions). Check if any from Form(s): 1 ☐ 8814  2 ☐ 4972  3 ☐ _____ | **16** | 1,951 |
| 17 | Amount from Schedule 2, line 3 . . . . . . . . . . . . . . . . . . . . . . | **17** | 0 |
| 18 | Add lines 16 and 17 . . . . . . . . . . . . . . . . . . . . . . . . . . | **18** | 1,951 |
| 19 | Nonrefundable child tax credit or credit for other dependents from Schedule 8812 . . . . . . . . . . | **19** | |
| 20 | Amount from Schedule 3, line 8 . . . . . . . . . . . . . . . . . . . . | **20** | 0 |
| 21 | Add lines 19 and 20 . . . . . . . . . . . . . . . . . . . . . . . . . | **21** | 0 |
| 22 | Subtract line 21 from line 18. If zero or less, enter -0- . . . . . . . . . . . . . . | **22** | 1,951 |
| 23 | Other taxes, including self-employment tax, from Schedule 2, line 21 . . . . . . . . . . . | **23** | 0 |
| 24 | Add lines 22 and 23. This is your **total tax** . . . . . . . . . . . . . . . ▶ | **24** | 1,951 |

| | | | | |
|---|---|---|---|---|
| 25 | Federal income tax withheld from: | | | |
| a | Form(s) W-2 . . . . . . . . . . . . . . | **25a** | 0 | |
| b | Form(s) 1099 . . . . . . . . . . . . . . | **25b** | 0 | |
| c | Other forms (see instructions) . . . . . . . . . | **25c** | 0 | |
| d | Add lines 25a through 25c . . . . . . . . . . . . . . . . . . . | **25d** | 0 |

*If you have a qualifying child, attach Sch. EIC.*

| | | | | |
|---|---|---|---|---|
| 26 | 2021 estimated tax payments and amount applied from 2020 return . . . . . | | **26** | 0 |
| 27a | Earned income credit (EIC) . . . . . | **27a** | | |
| | Check here if you were born after January 1, 1998, and before January 2, 2004, and you satisfy all the other requirements for taxpayers who are at least age 18, to claim the EIC. See instructions ▶ ☐ | | | |
| b | Nontaxable combat pay election . . . . . . | **27b** | | |
| c | Prior year (2019) earned income . . . . . . | **27c** | | |
| 28 | Refundable child tax credit or additional child tax credit from Schedule 8812 | **28** | 3,000 | |
| 29 | American opportunity credit from Form 8863, line 8 . . . . . . . . . | **29** | | |
| 30 | Recovery rebate credit. See instructions . . . . . . . . . . . . | **30** | 2,800 | |
| 31 | Amount from Schedule 3, line 15 . . . . . . . . . . . . . . | **31** | 0 | |
| 32 | Add lines 27a and 28 through 31. These are your **total other payments and refundable credits** ▶ | | **32** | 5,800 |
| 33 | Add lines 25d, 26, and 32. These are your **total payments** . . . . . . . . . . . ▶ | | **33** | 5,800 |

**Refund**

| | | | |
|---|---|---|---|
| 34 | If line 33 is more than line 24, subtract line 24 from line 33. This is the amount you **overpaid** . . . . | **34** | 3,849 |
| 35a | Amount of line 34 you want **refunded to you.** If Form 8888 is attached, check here . . . . . ▶ ☐ | **35a** | 3,849 |

*Direct deposit? See instructions.*

▶ b Routing number  XXXXXXXXX          ▶ c Type: ☐ Checking  ☐ Savings

▶ d Account number  XXXXXXXXXXXXXXXXX

| | | | |
|---|---|---|---|
| 36 | Amount of line 34 you want applied to your 2022 estimated tax . . . ▶ | **36** | 0 |

**Amount You Owe**

| | | | |
|---|---|---|---|
| 37 | **Amount you owe.** Subtract line 33 from line 24. For details on how to pay, see instructions . . ▶ | **37** | |
| 38 | Estimated tax penalty (see instructions) . . . . . . . . . . . ▶ | **38** | |

**Third Party Designee**

Do you want to allow another person to discuss this return with the IRS? See instructions . . . . . . . . . . . . . . . . . . . . . ▶ ☐ Yes. Complete below.  ☒ No

Designee's name ▶            Phone no. ▶            Personal identification number (PIN) ▶

**Sign Here**

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Your signature *[signature]*  |  Date 11/2/2022  |  Your occupation AC tech  |  If the IRS sent you an Identity Protection PIN, enter it here (see inst.) ▶

*Joint return? See instructions. Keep a copy for your records.*

Spouse's signature. If a joint return, both must sign.  |  Date  |  Spouse's occupation  |  If the IRS sent your spouse an Identity Protection PIN, enter it here (see inst.) ▶

Phone no. ████-4081  |  Email address

**Paid Preparer Use Only**

| Preparer's name | Preparer's signature | Date | PTIN | Check if: ☐ Self-employed |
|---|---|---|---|---|

Firm's name ▶                                                          Phone no.

Firm's address ▶                                                        Firm's EIN ▶

KIA    Go to *www.irs.gov/Form1040* for instructions and the latest information.                  Form **1040** (2021)

US v. Edward Richmod 23-mj-239-ZMF-JEB                    Exhibit **O**  Page 2 of 4

**Form 1040** Department of the Treasury—Internal Revenue Service
**U.S. Individual Income Tax Return** **2022** OMB No. 1545-0074 IRS Use Only—Do not write or staple in this space.

**Filing Status**
Check only one box.

☐ Single ☐ Married filing jointly ☐ Married filing separately (MFS) ☒ Head of household (HOH) ☐ Qualifying surviving spouse (QSS)

If you checked the MFS box, enter the name of your spouse. If you checked the HOH or QSS box, enter the child's name if the qualifying person is a child but not your dependent.

| Your first name and middle initial | Last name | Your social security number |
|---|---|---|
| Edward        L | Richmond        JR | ████████0403 |
| If joint return, spouse's first name and middle initial | Last name | Spouse's social security number |
|  |  |  |

Home address (number and street). If you have a P.O. box, see instructions. ████████████ Apt. no.

City, town, or post office. If you have a foreign address, also complete spaces below. MAUREPAS — State LA — ZIP code 70449

Foreign country name — Foreign province/state/county — Foreign postal code

**Presidential Election Campaign**
Check here if you, or your spouse if filing jointly, want $3 to go to this fund. Checking a box below will not change your tax or refund.
☐ You ☐ Spouse

**Digital Assets** At any time during 2022, did you: (a) receive (as a reward, award, or payment for property or services); or (b) sell, exchange, gift, or otherwise dispose of a digital asset (or a financial interest in a digital asset)? (See instructions.) ☐ Yes ☒ No

**Standard Deduction** Someone can claim: ☐ You as a dependent ☐ Your spouse as a dependent
☐ Spouse itemizes on a separate return or you were a dual-status alien

**Age/Blindness** You: ☐ Were born before January 2, 1958 ☐ Are blind Spouse: ☐ Was born before January 2, 1958 ☐ Is blind

**Dependents (see instructions):**
If more than four dependents, see instructions and check here. . . ☐

| (1) First name     Last name | (2) Social security number | (3) Relationship to you | (4) Check the box if qualifies for (see instructions): | |
|---|---|---|---|---|
|  |  |  | Child tax credit | Credit for other dependents |
| ZADE     RICHMOND | ████4796 | Son | ☒ | ☐ |
|  |  |  | ☐ | ☐ |
|  |  |  | ☐ | ☐ |
|  |  |  | ☐ | ☐ |

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a Form W-2, see instructions.

Attach Sch. B if required.

**Standard Deduction for—**
- Single or Married filing separately, $12,950
- Married filing jointly or Qualifying surviving spouse, $25,900
- Head of household, $19,400
- If you checked any box under Standard Deduction, see instructions.

| | | |
|---|---|---|
| 1a Total amount from Form(s) W-2, box 1 (see instructions) . . . . . . . . . . . . . | 1a | 0 |
| b Household employee wages not reported on Form(s) W-2 . . . . . . . . . . . . | 1b | |
| c Tip income not reported on line 1a (see instructions) . . . . . . . . . . . . . | 1c | |
| d Medicaid waiver payments not reported on Form(s) W-2 (see instructions) . . . . | 1d | |
| e Taxable dependent care benefits from Form 2441, line 26 . . . . . . . . . . | 1e | |
| f Employer-provided adoption benefits from Form 8839, line 29 . . . . . . . . | 1f | |
| g Wages from Form 8919, line 6 . . . . . . . . . . . . . . . . . . . | 1g | |
| h Other earned income (see instructions) . . . . . . . . . . . . . . . . | 1h | 0 |
| i Nontaxable combat pay election (see instructions) . . . . . . 1i | | |
| z Add lines 1a through 1h . . . . . . . . . . . . . . . . . . . . . | 1z | 0 |
| 2a Tax-exempt interest . . . . . . . 2a   0 b Taxable interest . . . . . . . | 2b | 0 |
| 3a Qualified dividends . . . . . . . 3a   0 b Ordinary dividends . . . . . . | 3b | 0 |
| 4a IRA distributions . . . . . 4a b Taxable amount . . . . . . . | 4b | 0 |
| 5a Pensions and annuities . . . 5a b Taxable amount . . . . . . | 5b | 0 |
| 6a Social security benefits . . . 6a b Taxable amount . . . . . . | 6b | 0 |
| c If you elect to use the lump-sum election method, check here (see instructions) . . . . . . . ☐ | | 0 |
| 7 Capital gain or (loss). Attach Schedule D if required. If not required, check here . . . . . ☐ | 7 | |
| 8 Other income from Schedule 1, line 10 . . . . . . . . . . . . . . . . . | 8 | 14,668 |
| 9 Add lines 1z, 2b, 3b, 4b, 5b, 6b, 7, and 8. This is your **total income** . . . . . . . . | 9 | 14,668 |
| 10 Adjustments to income from Schedule 1, line 26 . . . . . . . . . . . . . . | 10 | 0 |
| 11 Subtract line 10 from line 9. This is your **adjusted gross income** . . . . . . . . | 11 | 14,668 |
| 12 **Standard deduction or itemized deductions** (from Schedule A) . . . . . . . . | 12 | 19,400 |
| 13 Qualified business income deduction from Form 8995 or Form 8995-A . . . . . . | 13 | 0 |
| 14 Add lines 12 and 13 . . . . . . . . . . . . . . . . . . . . . . . | 14 | 19,400 |
| 15 Subtract line 14 from line 11. If zero or less, enter -0-. This is your **taxable income** . . | 15 | |

KIA **For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.** Form **1040** (2022)

Form 1040 (2022)                                                                    Page **2**

| Tax and Credits | | | | |
|---|---|---|---|---|
| 16 | Tax (see instructions). Check if any from Form(s): 1 ☐ 8814  2 ☐ 4972  3 ☐ _____ | | **16** | 0 |
| 17 | Amount from Schedule 2, line 3 . . . . . . . . . . . . . . . . . | | **17** | 0 |
| 18 | Add lines 16 and 17 . . . . . . . . . . . . . . . . . . . . . | | **18** | 0 |
| 19 | Child tax credit or credit for other dependents from Schedule 8812 . . . . . | | **19** | |
| 20 | Amount from Schedule 3, line 8 . . . . . . . . . . . . . . . . | | **20** | 0 |
| 21 | Add lines 19 and 20 . . . . . . . . . . . . . . . . . . . . . | | **21** | 0 |
| 22 | Subtract line 21 from line 18. If zero or less, enter -0- . . . . . . . . . | | **22** | 0 |
| 23 | Other taxes, including self-employment tax, from Schedule 2, line 21 . . . . | | **23** | 0 |
| 24 | Add lines 22 and 23. This is your **total tax** . . . . . . . . . . . . | | **24** | 0 |

| Payments | | | | | |
|---|---|---|---|---|---|
| 25 | Federal income tax withheld from: | | | | |
| a | Form(s) W-2 . . . . . . . . . . . . | **25a** | 0 | | |
| b | Form(s) 1099 . . . . . . . . . . . . | **25b** | 0 | | |
| c | Other forms (see instructions) . . . . . . . | **25c** | 0 | | |
| d | Add lines 25a through 25c . . . . . . . . . . . . . . . . . . | | | **25d** | 0 |

*If you have a qualifying child, attach Sch. EIC.*

| | | | | | |
|---|---|---|---|---|---|
| 26 | 2022 estimated tax payments and amount applied from 2021 return . . . . . | | | **26** | 0 |
| 27 | Earned income credit (EIC) . . . . . . . . | **27** | | | |
| 28 | Additional child tax credit from Schedule 8812 . . . | **28** | | | |
| 29 | American opportunity credit from Form 8863, line 8 . . . | **29** | | | |
| 30 | Reserved for future use . . . . . . . . . | **30** | | | |
| 31 | Amount from Schedule 3, line 15 . . . . . . . . . | **31** | 0 | | |
| 32 | Add lines 27, 28, 29, and 31. These are your **total other payments and refundable credits** . . . . | | | **32** | 0 |
| 33 | Add lines 25d, 26, and 32. These are your **total payments** . . . . . . . | | | **33** | 0 |

| Refund | | | | |
|---|---|---|---|---|
| 34 | If line 33 is more than line 24, subtract line 24 from line 33. This is the amount you **overpaid** . . . . | **34** | |
| 35a | Amount of line 34 you want **refunded to you**. If Form 8888 is attached, check here . . . . . . ☐ | **35a** | |

*Direct deposit? See instructions.*

| | | | | |
|---|---|---|---|---|
| b | Routing number   XXXXXXXXX | c Type: ☐ Checking  ☐ Savings | | |
| d | Account number   XXXXXXXXXXXXXXXX | | | |
| 36 | Amount of line 34 you want **applied to your 2023 estimated tax** . . . . . | **36** | |

| Amount You Owe | | | | |
|---|---|---|---|---|
| 37 | Subtract line 33 from line 24. This is the **amount you owe**. For details on how to pay, go to *www.irs.gov/Payments* or see instructions . . . . . . . . | | **37** | 0 |
| 38 | Estimated tax penalty (see instructions) . . . . . . . . . | **38** | | |

**Third Party Designee**

Do you want to allow another person to discuss this return with the IRS? See instructions . . . . . . . ☐ **Yes. Complete below.**  ☒ **No**

| Designee's name | Phone no. | Personal identification number (PIN) |
|---|---|---|
| | | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Your signature | Date | Your occupation   AC tech | If the IRS sent you an Identity Protection PIN, enter it here (see inst.) |
|---|---|---|---|

*Joint return? See instructions. Keep a copy for your records.*

| Spouse's signature. If a joint return, **both must sign.** | Date | Spouse's occupation | If the IRS sent your spouse an Identity Protection PIN, enter it here (see inst.) |
|---|---|---|---|

Phone no. ████4081   Email address DRICHMOND@PEARCEUSA.COM

| Paid Preparer Use Only | Preparer's name | Preparer's signature | Date | PTIN | Check if: ☐ Self-employed |
|---|---|---|---|---|---|
| | Firm's name | | | Phone no. | |
| | Firm's address | | | Firm's EIN | |

KIA   Go to *www.irs.gov/Form1040* for instructions and the latest information.                    Form **1040** (2022)

exterior of the U.S. Capitol building, and USCP were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

17.   At around 1:00 p.m. EST, known and unknown individuals broke through the police lines, toppled the outside barricades protecting the U.S. Capitol, and pushed past USCP and supporting law enforcement officers there to protect the U.S. Capitol.

18.   At around 1:30 p.m. EST, USCP ordered Congressional staff to evacuate the House Cannon Office Building and the Library of Congress James Madison Memorial Building in part because of a suspicious package found nearby.  Pipe bombs were later found near both the Democratic National Committee and Republican National Committee headquarters.

19.   Media reporting showed a group of individuals outside of the Capitol chanting, "Hang Mike Pence."  I know from this investigation that some individuals believed that Vice President Pence possessed the ability to prevent the certification of the presidential election and that his failure to do so made him a traitor.

20.   At approximately 2:00 p.m. EST, some people in the crowd forced their way through, up, and over the barricades and law enforcement.  The crowd advanced to the exterior façade of the building.  The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.  At such time, the certification proceedings were still underway, and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured.  Members of law enforcement attempted to maintain order and keep the crowd from entering the Capitol.

6



DEFENDANT'S
EXHIBIT
P

21.     Shortly after 2:00 p.m. EST, individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts.  Publicly available video footage shows an unknown individual saying to a crowd outside the Capitol building, "We're gonna fucking take this," which your affiant believes was a reference to "taking" the U.S. Capitol.



22.     Shortly thereafter, at approximately 2:20 p.m. EST, members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers.  That is, at or about this time, USCP ordered all nearby staff, Senators, and reporters into the Senate chamber and locked it down.  USCP ordered a similar lockdown in the House chamber.  As the subjects attempted to break into the House chamber, by breaking the windows on the chamber door, law

7

enforcement was forced to draw their weapons to protect the victims sheltering inside.

23.     At approximately 2:30 p.m. EST, known and unknown subjects broke windows and pushed past USCP and supporting law enforcement officers forcing their way into the U.S. Capitol on both the west side and the east side of the building.  Once inside, the subjects broke windows and doors, destroyed property, stole property, and assaulted federal police officers. Many of the federal police officers were injured, and several were admitted to the hospital.  The subjects also confronted and terrorized members of Congress, Congressional staff, and the media.  The subjects carried weapons including tire irons, sledgehammers, bear spray, and Tasers.  They also took police equipment from overrun police including shields and police batons.  At least one of the subjects carried a handgun with an extended magazine.  These actions by the unknown individuals resulted in the disruption and ultimate delay of the vote Certification.

24.     Also, at approximately 2:30 p.m. EST, USCP ordered the evacuation of lawmakers, Vice President Mike Pence, and president pro tempore of the Senate, Charles Grassley, for their safety.

25.     At around 2:45 p.m. EST, subjects broke into the office of House Speaker Nancy Pelosi.

26.     At around 2:47 p.m. EST, subjects broke into the United States Senate Chamber. Publicly available video shows an individual asking, "Where are they?" as they opened up the door to the Senate Chamber.  Based upon the context, law enforcement believes that the word "they" is in reference to members of Congress.

8

### *Facts Specific to This Application*

40.     On or about January 12, 2021, an FBI agent reviewing social media videos of the events of January 6, 2021 at the Capitol noticed an individual with a baton appearing to assault police officers in the Lower West Terrace entrance of the Capitol (known as "the Tunnel"). The individual was wearing a helmet, goggles, shoulder pads, and a Louisiana State Flag patch on his chest. This individual was also carrying an orange two-way radio on his chest. Based on this video footage, the FBI agent added this individual to an FBI wanted poster, which was released to the public as BOLO 182.

41.     On or about February 9, 2021, a tip was received via the FBI tip line. The tipster stated that the individual shown in FBI BOLO 182, nicknamed "███ghtyear" on the Twitter feed "#███hunters," resembled a former neighbor of approximately 12 years, named EDWARD RICHMOND. The tipster stated that RICHMOND served in the military and lived his entire life in Louisiana. The tipster provided an address for RICHMOND as ██████ ██████ Rd, Geismar, LA, and a phone number of ██████2124. A search of law enforcement databases confirmed that the address and phone number are associated with an Edward Richmond Jr., currently 40 years old. The address also matches the address on one of RICHMOND's state issued identifications.[1]

42.     On or about April 20, 2021, after receiving another tip, an FBI agent interviewed a confidential witness ("CW-1") regarding the January 6 events at the United States Capitol. CW-1 stated he/she had traveled to Washington D.C. from Ohio with a group of approximately

---

[1] Richmond has several different listed addresses on various state-issued identifications.

DEFENDANT'S
EXHIBIT
Q

15

nine other individuals who planned to attend the rallies planned for the day.  CW-1 was shown a photo of the security team hired to travel with CW-1, which was posted by CW-1 on his/her social media account.  In the photo shown to CW-1, CW-1 identified a man wearing a black helmet, goggles, shoulder pads, an orange 2-way radio, and a patch on his chest of the Louisiana state flag, as "EDDIE."  CW-1 stated he/she did not know "EDDIE's" full name.  The man CW-1 identified in the photo as "EDDIE" is the same person previously identified by law enforcement as BOLO 182.  CW-1 also stated that "EDDIE" stayed at the Phoenix Park Hotel, located at 520 North Capitol St NW, Washington, D.C., with CW-1 and the rest of the group while they were in Washington for the rally.  CW-1 stated that they stayed at the hotel from January 5 until January 7, 2021.

43.    The photograph below is the same photograph obtained from a social media account and shown to CW-1 by FBI agents, which was used to positively identify RICHMOND.

16

see the content of these conversations is on the electronic device that had been used to send or receive the communications.

67.     Based on my review of RICHMOND's phone records, RICHMOND used a mobile phone to make calls and texts intermittently throughout the day on January 6, 2021—from at least approximately 6:59 a.m. to 9:41 p.m., a time period that includes the time during which there is probable cause to believe he was at the Capitol (and committed the Target Offenses) on January 6, 2021.  On April 20, 2021, CW-1 was interviewed by members of the FBI.  From January 5 through January 7, 2021, CW-1, and other party supporters, stayed at the Phoenix Park Hotel in Washington, DC.  Due to their experience at a prior political rally, CW-1 arranged for a group of individuals to provide security for CW-1, and their travel companions. CW-1 arranged security through Roy MASSEY and Benjamin BUCK.  CW-1 identified Roy MASSEY's telephone number as 225-335-2458.  CW-1 was later shown a photograph with four males.  CW-1 identified Roy MASSEY and Benjamin BUCK by their full names.  CW-1 identified an individual wearing a black helmet and protective equipment as "Eddie." The fourth male was identified as "Tony." Toll records received pursuant to the Grand Jury subpoena served on AT&T for RICHMOND's 225-290-6657 phone number, showed that on January 6, 2021, RICHMOND, utilizing 225-290-6657 (x6657), was in contact with Roy MASSEY, utilizing 225-335-2458. There were at least five activations between MASSEY and RICHMOND on January 6, 2021.

68.     On or about January 20, 2022, CW-2 identified 225-247-0879 as the phone number for RICHMOND. A Grand Jury subpoena was subsequently served to AT&T for subscriber and toll records associated to 225-247-0879 (x0879). The subscriber for this number

38